Ronald G. ANDERSON, et al.

v.

The UNITED STATES.

Daniel W. COFFEY

v.

The UNITED STATES.

George MERCURIO and Edward P. Smith

v.

The UNITED STATES.

Nos. 250–82C, 551–82C and 232–84C.

United States Claims Court.

June 6, 1984.

Donald H. Green, Washington, D.C., for plaintiffs. Stephen M. Truitt, Daniel H. Squire, Wald, Harkrader & Ross, Washington, D.C., and Lester W. Miller, Jr., Anchorage, Alaska, of counsel.

Robert A. Reutershan, Washington, D.C., with whom was Acting Asst. Atty. Gen. Richard K. Willard, Washington, D.C., for defendant. Melinda Golub, David M. Cohen, and Sandra P. Spooner, Washington, D.C., of counsel.

## OPINION

SPECTOR, Senior Judge.

Plaintiffs are 54 construction workers who have been employed by the Indian Health Service (IHS) in the U.S. Department of Health and Human Services. They seek monetary damages based on defendant's failure to provide them with sick and annual leave, health and life insurance benefits, per diem allowances, and the rates of pay they would be entitled to as prevailing-rate employees. They also seek a declaratory judgment that they are entitled to the above-described benefits, as well as interest and attorneys' fees.

■ Defendant has filed a Partial Motion to Dismiss on three grounds. First, defendant seeks to have the claims for sick and annual leave and health and life insurance benefits dismissed for lack of subject matter jurisdiction. Second, defendant seeks to have the claims for health and life insurance benefits dismissed on the grounds that plaintiffs have failed to exhaust their administrative remedies. Third, defendant seeks to have all claims for damages occurring prior to May 19, 1976 dismissed as barred by the six-year statute of limitations.

### Statement of Facts [1]

Plaintiffs have been engaged in the construction of sanitation facilities for the IHS throughout the State of Alaska. They were appointed to their positions either as "intermittent" or "temporary" or "term" employees. Plaintiffs complain that their characterization as "intermittent" employees is improper because they have maintained regular work schedules during the periods they have been employed by the IHS; because they have worked six 10-hour days per week; and because they have consistently worked between 2,000 and 3,000 hours per year.

Plaintiffs also maintain that they are not properly characterized as "temporary" employees. Actually, most of the plaintiffs were given four-year "term" appointments, and plaintiffs contend that a "term" appointment is by definition not a "temporary" appointment. Even those plaintiffs who have worked for a period of time under a "temporary" appointment, it is charged, are not properly characterized as "temporary" appointments because they were not appointed to fill a temporary need, as would be required by the federal personnel regulations.[2] As a result of their having been carried as "intermittent" or "temporary" employees, the IHS has determined that plaintiffs were not entitled to accrue annual or sick leave, or to be extended health or life insurance benefits.

Furthermore, during their employment with the IHS, plaintiffs have been assigned to designated duty stations, and have been required by the IHS to travel away from their designated stations to work on various construction projects throughout the State of Alaska. Plaintiffs have not been paid per diem allowances when so travelling. In addition, as blue-collar employees, plaintiffs are subject to the provisions of 5 U.S.C. Sec. 5341 *et seq.* and would be entitled to be paid "wages fixed and adjusted in accordance with the prevailing rates in the local area." Plaintiffs claim that they have not been paid those prevailing rates.

---

**1.** For the limited purpose of evaluating this Partial Motion to Dismiss, the facts alleged by the plaintiffs in their complaints are regarded as established. See, for example, *Balboa Ins. Co. v. United States,* 3 Cl.Ct. 543, 544 (1983).

**2.** *See* 5 C.F.R. § 316.401 (1983).

## DISCUSSION

### Issue of Subject Matter Jurisdiction

The Tucker Act vests jurisdiction in this court "to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States. * * * "[3] Defendant's motion argues that the court lacks jurisdiction because no right to recover the damages sought herein is expressly set forth in the Constitution, any Act of Congress, or any regulation, and that consequently sovereign immunity has not been waived in these cases.

The ruling on this aspect of defendant's motion hinges upon an evaluation of the U.S. Supreme Court's second decision in *United States v. Mitchell* (hereinafter *Mitchell II*),[4] and its impact upon that court's prior decision in *United States v. Testan.*[5] In *Testan* the U.S. Supreme Court had held that the Tucker Act is solely a jurisdictional statute, and that it does not waive sovereign immunity.[6] After the decision in *Testan*, the conventional wisdom had been that an additional and express waiver of sovereign immunity must be found elsewhere than in the Tucker Act in order for this court to consider a case brought under that Act.[7] However, in *Mitchell II*, the Court modified *Testan* to this extent:

"In *United States v. Testan*, 424 U.S. 392, 398, 400, 96 S.Ct. 948, 953, 954, 47 L.Ed.2d 114 (1976), and in *United States v. Mitchell*, 445 U.S., at 538, 100 S.Ct., at 1351, this Court employed language suggesting that the Tucker Act does not effect a waiver of sovereign immunity. Such language was not necessary to the decision in either case. See *infra*, at 2968–2969. Without in any way questioning the result in either case, we conclude that this isolated language should be disregarded. If a claim falls within the terms of the Tucker Act, the United States has presumptively consented to suit." [8]

The dissenting opinion in *Mitchell II* confirms that this is the holding of the majority.[9]

*Mitchell II*, however, does preserve the holding in *Testan* and *Mitchell I* in the following respect. Mitchell II holds that the Tucker Act is not deemed in and of itself to create a substantive right to monetary damages enforceable against the United States, and that such a right must be found in some other source of law.[10] That holding is modified somewhat by the statement that a claimant need only "demonstrate that the source of substantive law he relies upon 'can fairly be interpreted as mandating compensation by the Federal Government for the damages sustained'." [11]

---

**3.** 28 U.S.C. § 1491(a)(1) (1982).

**4.** 463 U.S. 206, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983).

**5.** 424 U.S. 392, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976).

**6.** *Id.* at 398–400, 96 S.Ct. at 953–954.

**7.** *United States v. Mitchell*, 445 U.S. 535, 100 S.Ct. 1349, 63 L.Ed.2d 607 (1980) (hereinafter *Mitchell I*).

**8.** 103 S.Ct. at 2967.

**9.** "It (the majority opinion) has effectively reversed the presumption that absent 'affirmative statutory authority,' *United States v. United States Fidelity & Guaranty Co.*, 309 U.S. 506, 514, 60 S.Ct. 653, 657, 84 L.Ed. 894 (1940), the

United States has not consented to be sued for damages." 103 S.Ct. at 2974–2975.

**10.** "It nonetheless remains true that the Tucker Act ' "does not create any substantive right enforceable against the United States for money damages." ' *United States v. Mitchell*, 445 U.S., at 538, 100 S.Ct., at 1351 quoting *United States v. Testan*, 424 U.S., at 398, 96 S.Ct. at 953. A substantive right must be found in some other source of law, such as 'the Constitution, or any Act of Congress, or any regulation of an executive department.'" 103 S.Ct. 2967–2968.

**11.** 103 S.Ct. at 2968, *citing Testan*, 424 U.S. at 400, 96 S.Ct. at 954, which in turn quotes *Eastport S.S. Corp. v. United States*, 178 Ct.Cl. 599, 607, 372 F.2d 1002, 1009 (1967). In its footnote 16, the Court states: "As the *Eastport* decision recognized, the substantive source of law may grant the claimant a right to recover damages

It is therefore critical to an understanding of *Mitchell II* (and of the instant cases) to recognize that the substantive right to recover money damages need not be express, but may be implied.[12] Although the Court does reiterate prior case law holding that the consent to suit by the United States "has not been lightly inferred"[13], it clearly rules that consent to suit exists under the Tucker Act whenever a claim is founded upon statutes or regulations which can be "fairly interpreted as mandating compensation by the Federal Government for the damages sustained."[14]

That fair interpretation necessarily depends on the facts, and underlying substantive law, in each particular case. On the facts in *Mitchell II*, for example, the Court ruled that the statutes and regulations before the court could fairly be interpreted as mandating compensation, even though none of the pertinent statutes and regulations explicitly provided for a remedy in the form of monetary damages.[15] As earlier observed[16] the Court also cited the *Eastport S.S. Corp.* decision of this court with approval, describing that case as holding that the "substantive source of law may

grant the claimant a right to recover damages either 'expressly or by implication'."[17] It is therefore proper to interpret the Constitution, a statute, or a regulation as creating a right to recover monetary damages, even though such a right is not explicitly set forth.

Although *Mitchell II* does not provide specific guidelines for implying a right to monetary damages in any particular case, the Court's reasoning in that decision, including its re-interpretation of *Testan* and *Mitchell I*,[18] can reasonably be analyzed as follows: The Constitution, a statute, or a regulation should be "fairly interpreted as mandating compensation" when

(1) A right to a benefit is thereby conferred;

(2) The benefit conferred is economic in nature;

(3) The Government breaches its duty to confer that benefit.

On the facts in *Mitchell II*, for example, the Court held that the statutes and regulations relied upon by the plaintiffs gave "the Federal Government full responsibility to manage Indian resources and lands for the benefit of the Indians. They thereby es-

---

either 'expressly or by implication.' *Id.* at 605, 372 F.2d at 1007."

**12.** 103 S.Ct. at 2968–2969.

**13.** 103 S.Ct. at 2968, citing, *United States v. King,* 395 U.S. 1, 4–5, 89 S.Ct. 1501, 1502–1503, 23 L.Ed.2d 52 (1969).

**14.** In this connection the Court further stated that:

"In undertaking this inquiry, *a court need not find a separate waiver of sovereign immunity in the substantive provision, just as a court need not find consent to suit in 'any express or implied contract with the United States.' Ibid. The Tucker Act itself provides the necessary consent.*

\* \* \* \* \* \*

"In this case, however, there is simply no question that the Tucker Act provides the United States' consent to suit for claims founded upon statutes or regulations that create substantive rights to money damages. *If a claim falls within this category, the existence of a waiver of sovereign immunity is clear. The question is this case is thus analytically distinct: whether the statutes or regulations at issue can be interpreted as requiring compen-*

*sation. Because the Tucker Act supplies a waiver of immunity* for claims of this nature, the separate statutes and regulations need not provide a second waiver of sovereign immunity, nor need they be construed in the manner appropriate to waivers of sovereign immunity. See *United States v. Emery, Bird, Thayer Realty Co.,* 237 U.S. 28, 32, [35 S.Ct. 499, 500, 59 L.Ed. 825] (1915). ' "The exemption of the sovereign from suit involves hardship enough where consent has been withheld. We are not to add to its rigor by refinement of construction where consent has been announced." ' *United States v. Aetna Surety Co.,* 338 U.S. 366, 383 [1949] [, 70 S.Ct. 207, 216, 94 L.Ed. 171,] quoting *Anderson v. John L. Hayes Constr. Co.,* 243 N.Y. 140, 147, 153 N.E. 28, 29–30 (1926) (Cardozo, J.)." (Emphasis supplied; footnote omitted.) 103 S.Ct. at 2968–2969.

**15.** 103 S.Ct. at 2969–2974.

**16.** Note 11, *supra.*

**17.** *Eastport S.S. Corp.,* 178 Ct.Cl. at 607, 372 F.2d at 1009.

**18.** Notes 6 and 7, *supra.*

tablish a fiduciary relationship and define the contours of the United States' fiduciary responsibilities."[19] It was concluded that these statutes and regulations contained all of the necessary elements of a common law trust and therefore that they "can fairly be interpreted as mandating compensation by the Federal Government for damages sustained."[20]

In summary, the overall historical and regulatory scheme in *Mitchell II* was regarded as imposing a *duty* on the Secretary of the Interior to competently manage Indian lands, together with a corresponding *right* of the Indians to receive the benefits of competently managed lands. Because those benefits were essentially economic in nature, the Court further concluded that it was appropriate to imply a right to monetary damages to redress a breach of that duty. It is noteworthy that the Court considered the overall historical and regulatory scheme of Indian land management coupled with the substantive law of trusts, to reach its conclusion. This indicates that one is not necessarily confined to the literal text of relevant statutes and regulations in determining whether or not they "can fairly be interpreted as mandating compensation by the Federal Government for damages sustained."

The instant cases present additional problems, however, because they involve claims for civilian pay, as did *Testan*[21], and because the Court in *Mitchell II* takes pains to distinguish the facts in *Testan*. In the latter case, two Government attorneys claimed they were entitled to a higher grade and salary under the Classification

Act[22], and to an award of back pay under the Back Pay Act.[23] The Classification Act in effect establishes the principle of "equal pay for substantially equal work."[24] Referring to *Testan*, the Court in *Mitchell II* stated:

"This Court concluded that neither the Classification Act nor the Back Pay Act could fairly be interpreted as requiring compensation for wrongful classifications. See 424 U.S. at 398–407, 96 S.Ct., at 953–957. Particularly in light of the 'established rule that one is not entitled to the benefit of a position' until he has been appointed to it, *id.*, at 402, 96 S.Ct., at 955, the Classification Act does not support a claim for money damages. While the Back Pay Act does provide a basis for money damages as a remedy 'in carefully limited circumstances' such as wrongful reductions in grade, *id.*, at 404, 96 S.Ct. at 956, it does not apply to wrongful classifications. *Id.* at 405, 96 S.Ct. at 956."

■ Turning then to the assumed facts and to the statutes and regulations applicable to the instant cases, plaintiffs' claims for the monetary equivalent of annual and sick leave benefits and health and life insurance benefits depend upon whether or not the relevant statutes and regulations "can fairly be interpreted as mandating compensation by the Federal Government for the damages sustained."[25] There is no need to find a separate waiver of sovereign immunity in those statutes or regulations, nor need those statutes and regulations be

**19.** 103 S.Ct. at 2972.

**20.** The Court elaborated as follows:
"The recognition of a damages remedy also furthers the purposes of the statutes and regulations, which clearly require that the Secretary manage Indian resources so as to generate proceeds for the Indians. It would be anomalous to conclude that these enactments create a right to the value of certain resources when the Secretary lives up to his duties, but no right to the value of the resources if the Secretary's duties are not performed. 'Absent a retrospective damages remedy, there would be little to deter federal officials from violat-

ing their trust duties, at least until the allottees managed to obtain a judicial decree against future breaches of trust.'" 103 S.Ct. at 2973.

**21.** Note 5, supra.

**22.** 5 U.S.C. § 5101 (1982).

**23.** 5 U.S.C. § 5596 (1982).

**24.** Note 22, supra.

**25.** *Mitchell II*, 103 S.Ct. at 2968.

construed in the manner appropriate to waivers of sovereign immunity.[26]

Plaintiffs have not received the above-described benefits because they were originally classified when hired as "temporary", "term" or "intermittent" employees. "Temporary" (including "term") and "intermittent" employees are excluded by statute and regulation from the general requirement that all federal workers shall receive those benefits.

For the purpose of granting annual and sick leave, an "employee" is defined as any employee of the federal government[27], but excluding a part-time employee who does not have an established regular tour of duty during the administrative workweek.[28] A "temporary" employee engaged in construction work at an hourly rate is also excluded.

"Intermittent" employment is defined by the Federal personnel Manual[29] as that which requires work on an irregular basis for which there is no prearranged tour of duty. "Temporary" limited employment is defined in 5 C.F.R. § 316.401 (1983) as an appointment made for one year or less "to meet administrative need."

For the purpose of granting health benefits, 5 U.S.C. § 8913(b) (1982) provides that the Office of Personnel Management "may prescribe the time at which and the manner and conditions under which an employee is eligible to enroll in an approved health benefits plan ....." The applicable regulations promulgated by the OPM provide that "each employee, other than those excluded by paragraph (c) of this section, is eligible to be enrolled in a health benefits plan ....." Paragraph (c) excludes: (1) An employee serving under an appointment limited to one year or less, ..... (2) An employee whose employment is of uncertain or purely temporary duration, or who is employed for brief periods at intervals, and

an employee who is expected to work less than 6 months in each year, ..... (3) An intermittent employee—a non-full-time employee without a prearranged regular tour of duty ....." [30] "Term" employment is defined as an appointment for a period of more than one year, but limited to a period of four years or less.[31]

The statute granting life insurance benefits[32] provides that the OPM may exclude an employee by regulation. Pursuant to the relevant regulation,[33] all employees are entitled to health and life insurance benefits except those explicitly excluded by 5 C.F.R. § 870.201 (1983).

That section excludes:

"(1) An employee serving under an appointment limited to one year or less .....

(2) An employee whose employment is of uncertain and purely temporary duration, or who is employed for brief periods at intervals, and an employee who is expected to work less than 6 months in each year .....

(3) An intermittent employee—a non-full-time employee without a prearranged regular tour of duty ....."

Plaintiffs allege *inter alia* that they were not properly classified as "intermittent" employees because (as earlier noted) they have maintained a regular schedule during the periods they have worked for the IHS. They have worked six ten-hour days per week and between 2,000 and 3,000 hours per year, including hundreds of hours of overtime. Similarly, plaintiffs allege that they were not properly classified as "temporary" employees because most of them had four year "term" appointments under the federal personnel regulations, and therefore were not temporary employees, for a period of limited duration. Moreover, even those plaintiffs who have

---

26. Note 14, *supra.*

27. 5 U.S.C. § 2105 (1982).

28. 5 U.S.C. § 6301(2)(B)(ii) (1982).

29. Supp. 296–33, Subchapt. 34.

30. 5 C.F.R. § 890.102 (1983).

31. 5 C.F.R. § 316.301.

32. 5 U.S.C. § 8701(a)(C) (1982).

33. 5 C.F.R. § 870.201.

worked for a period of time under "temporary" appointment are not properly classified as temporary employees, it is contended, because they were not appointed to fill a temporary need, as required by the federal personnel regulations.[34]

As a consequence of having been wrongfully classified as "temporary" ("term"), and "intermittent" employees, plaintiffs contend that they have been wrongfully included in that small class of employees who are excluded from the benefits claimed herein.

Plaintiffs also find it objectionable that "term" employment is generally regarded by the OPM as just another form of temporary employment.[35] They contend that their assigned classifications should not determine their entitlement to benefits, because those classifications are clearly wrong. The federal statutes and regulations, they argue, command that the benefits they seek be provided to all federal employees, except for a few limited classes of workers. "Term" employees are not among those excluded, and therefore they should not be excluded by lumping them with "temporary" employees.

█ Plaintiffs correctly perceive that the scheme of the regulations could have been "fairly interpreted as mandating compensation"[36] *if* plaintiffs had not been improperly classified as "temporary" or "intermittent" employees. But, plaintiffs are mistaken when they say that they do not have to be expressly reclassified as something other than "temporary", "term", or "intermittent" employees in order to secure relief in these cases. The statutes and regulations governing sick and annual leave and health and life insurance benefits impose an affirmative duty to grant all federal employees these benefits, *except those workers who are appointed to classifications specifically excluded from receiving them.* Only employees who are not members of an excluded class have a right to the benefits. These benefits are part of an overall compensation plan and therefore they are essentially economic in nature. Accordingly, it would be appropriate to interpret the regulatory scheme governing them as mandating retrospective compensation, *if* (and only if) plaintiff's were not members of an excluded class. But it would be inappropriate for this court to rule that plaintiffs were not properly classified as "temporary" (including "term") employes and "intermittent" employees, without reclassifying them. And this court clearly lacks the power to reclassify plaintiffs.[37] The rule that a court "will consider that done which ought to have been done", has not been applied in this type of case.

In *Bird v. United States,*[38] 19 employees of the Immigration and Naturalization Service sued for back pay, additional hours of annual and sick leave, and increased pension benefits on the ground that they had been improperly classified as "intermittent" rather than as "part-time" employees. In a brief order, the court granted defendant's motion to dismiss, holding that there was no substantive right to recover money damages, because a federal employee is entitled to receive only the salary and benefits of the position to which he was actually appointed.[39]

█ In this case, the applicable statutes and regulations cannot be read as specifically directing the employing federal offi-

---

**34.** 5 C.F.R. § 316.301 and 316.401.

**35.** Chapter 316 of the Federal Personnel Manual is entitled "Temporary Employment" and the subchapters are designated "Term Employment" and "Temporary Limited Employment." Similarly, Section 316 of the Code of Federal Regulations governs "temporary" employment. It contains regulations for both "term" and "temporary" appointments. The similar structure of these provisions suggests that both classes of appointments are expected be treated similarly.

Thus, "temporary" and "term" appointments are both regarded as "temporary" for the purpose of determining an employee's right to benefits.

**36.** See text at note 20, supra.

**37.** See *Mitchell II,* 103 S.Ct. at 2968, where the facts in *Testan* are reviewed and distinguished.

**38.** 231 Ct.Cl. ——, No. 94–81C (Aug. 6, 1982).

**39.** Citing *Testan,* note 5, supra.

cials to classify plaintiffs as something other than "temporary", "term" or "intermittent" employees. Therefore plaintiffs do not have a substantive right to be classified as other than "temporary" (including "term") or "intermittent" appointments and this court is without authority to correct their classification as a prerequisite to providing the economic benefits which plaintiffs seek.

In summary, no relevant statute or regulation can be "fairly interpreted" as expressly or impliedly "mandating compensation". It is concluded that *Mitchell II* did not modify nor overrule the ultimate decision in *Testan*, which arose out of similar facts. Therefore this court cannot hear plaintiffs' claims for sick and annual leave, and health and life insurance benefits. The claims for these benefits must be dismissed.

### Failure to Exhaust Administrative Remedies

 This issue is mooted with respect to the above-described claims by the disposition of defendant's argument of lack of "subject matter jurisdiction" as to sick and annual leave and health and life insurance benefits. If this argument is also directed to the remaining claims, the court must know additional facts, and the issue is prematurely raised.

### The Statute of Limitations

Defendant's third and final argument urging dismissal of all claims arising prior to May 19, 1976, as barred by the statute of limitations,[40] also requires determination of additional facts and is premature. This issue, as it applies to the remaining claims (per diem allowances, and rates of pay) will depend on the resolution of facts not in the pleadings and therefore not regarded as established for the purpose of evaluating this Partial Motion to Dismiss.

---

**40.** 28 U.S.C. Sec. 2501 (1982).

### Conclusion

Defendant's Partial Motion to Dismiss is allowed to the extent that it relates to plaintiffs' sick and annual leave, and health and life insurance benefits, and it being determined that there is no just reason for delay, the complaint shall be dismissed as to those claims without prejudice. With respect to the "failure to exhaust" issue, defendant's said motion shall be dismissed as moot to the extent that the argument is directed to the claims for annual and sick leave and health and life insurance benefits. Finally, with respect to the statute of limitations issue, defendant's said motion is premature, and it is denied without prejudice.