**Benjamin FRANCO, et al., Plaintiffs,**

**v.**

**The UNITED STATES, Defendant.**

**Rashid ABDUR–RAHMAN (1), et al., Plaintiffs,**

**v.**

**The UNITED STATES, Defendant.**

**Nos. 388–86C, 101–88C.**

United States Claims Court.

Aug. 16, 1988.

---

Robert G. Mullendore, Missoula, Mont., atty. of record for plaintiffs, and Michael H. Rorick, Seattle, Wash., of counsel.

Stephen J. McHale, with whom were Acting Asst. Atty. Gen. James M. Spears, David M. Cohen, and Robert Reutershan, Washington, D.C., for defendant. Susan Warshaw, Dept. of Navy, Washington, D.C., of counsel.

## OPINION

WIESE, Judge.

Title 20 of the United States Code, section 241(a) (1982), directs the Secretary of Education to arrange for the free public education of children residing on Federal property when such education is not otherwise made available to them through agencies of the host state or local community. In the discharge of this duty, the Secretary is authorized to hire personnel, and, in the case of such personnel employed outside the continental United States, Alaska and Hawaii, section 241(a) specifies they "shall receive such compensation, tenure, leave, hours of work, and other incidents of employment on the same basis as provided for similar positions in the public schools of the District of Columbia."

The question that comes up in this case is whether plaintiffs—employees of the Antilles Consolidated School System ("ACSS") in Puerto Rico and within the class of those favored by section 241(a)—may rely upon that statute to obtain compensation *in excess* of that paid for similar positions in the public schools of the District of Columbia based on the contention that they served a longer duty day than their District of Columbia counterparts. The claims are before the court as a demand for back pay presented through a motion for summary judgment. Defendant has cross-moved claiming, *inter alia*, that the statute does not authorize the monetary relief which plaintiffs seek and, therefore, that the court is without jurisdiction. We agree with defendant's position.

### I

The named plaintiffs are teachers and other nonsupervisory professional personnel employed by the United States within the Antilles Consolidated School System—a subordinate agency of the United States Navy. The ACSS is responsible for the education of children of United States personnel stationed at various military bases in Puerto Rico. At all times relevant to this suit, plaintiffs received an annual compensation equal in dollar amount to that provided to similar positions in the District of Columbia Public Schools ("DCPS"). As indicated, the present litigation involves plaintiffs' contention that, while the compensation they received was equal to that of comparable DCPS personnel, their hours of work were not.

Defining "hours of work" as time spent on duty and at the job site, plaintiffs maintain that between October 1, 1978 and the beginning of the 1982–83 school year, they

worked, on average, one hour per day more than their District of Columbia counterparts, and, between the beginning of the 1982–83 school year and 1986, they claim their daily work schedule averaged 45 minutes longer. They also say that, throughout this time period (1978–1986), they had a duty free lunch period that was fifteen minutes shorter than in D.C. Finally, they contend that, beginning with the 1983–84 school year, they did not enjoy the same amount of before and after school preparation time as the DCPS.

Plaintiffs maintain that these differences in the length and content of the instructional day are transgressions of the command set out in 20 U.S.C. § 241(a) which, as we have noted, requires that educational personnel such as plaintiffs receive "compensation, tenure, leave, hours of work, and other incidents of employment on the same basis as provided for similar positions in the public schools of the District of Columbia." The contention is that, pursuant to this language, plaintiffs are entitled to unequivocal alignment between all quantifiable aspects of their own positions and those of their counterparts in the District of Columbia school system. Based on this reading of the statute, plaintiffs now seek extra compensation for the extra time worked. Say the plaintiffs: "while this Court cannot make plaintiffs truly whole for the additional hours of work that were improperly required of them, the Court can at least remedy the correlative wrong of inadequate compensation."

The Government begins its argument on this last note. Without conceding any of plaintiffs' factual contentions regarding the claimed disproportion in hours worked, the Government asserts that the claims, even if true, cannot be redressed in this court. The court is said to lack jurisdiction over the matter because the statute on which plaintiffs base their claims, 20 U.S.C. § 241(a), does not authorize the entry of a money judgment against the United States in plaintiffs' favor for any sums beyond their basic entitlement to annual compensation measured at the rates prevailing in the District of Columbia. And since plaintiffs' demands are basically ones for more money based on more work, the claims go beyond what the statute authorizes and therefore what the court may enforce by money judgment.

## II

It is fundamental to this court's jurisdiction that, in order to sue here for money, the law, statute or regulation on which the demand is based must unequivocally demonstrate the Government's intention to provide a monetary benefit or to allow a monetary remedy in redress of an injury to a protected right. *United States v. Testan*, 424 U.S. 392, 398, 400, 96 S.Ct. 948, 953, 954, 47 L.Ed.2d 114 (1976), *Bowen v. Massachusetts*, 487 U.S. ——, —— n. 31, 108 S.Ct. 2722, 2735 n. 31, 101 L.Ed.2d 749 (1988). "Under Section 1491 what one must always ask is whether the constitutional clause or the legislation which the claimant cites can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained." *Eastport Steamship Corp. v. United States*, 178 Ct.Cl. 599, 607, 372 F.2d 1002, 1009 (1967).

Plaintiffs maintain that the requirements for our jurisdiction are satisfied in this case. In support of this position they say that, given the statute's mandate for equality of treatment between their positions and those of like responsibility in the DCPS, it follows that "additional compensation is obviously contemplated for additional hours of work." In other words, the argument is that even though Section 241(a) does not explicitly direct that additional compensation be paid for extra hours worked, nevertheless the authority for such a result may fairly be inferred from the basic purpose Congress had in mind in the enactment of the statute. To buttress the point they rely on a number of decisions, chief among these being *United States v. Mitchell*, 463 U.S. 206, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983) and *Anderson v. United States*, 5 Cl.Ct. 573 (1984), *aff'd* 764 F.2d 849 (Fed.Cir.1985). In our view, neither case is helpful to plaintiffs' position.

To consider first the *Mitchell* decision, that suit involved a claim for damages by the allottees of the Quinault Indian Reservation. One of the two principal issues raised in the case was whether plaintiffs— Indian beneficiaries of a statutory trust— had a right to pursue monetary relief against the United States for mismanagement of their forest resources by the Secretary of the Interior in the absence of an explicit recognition of such a right in the governing statutes. In deciding that question in the Indians' favor, the Court made the observation—now relied on by the plaintiffs—that "[t]he recognition of a damages remedy also furthers the purposes of the statutes and regulations, which clearly require that the Secretary manage Indian resources so as to generate proceeds for the Indians." *Id.* at 226–27, 103 S.Ct. at 2972–73. The Court also noted that " '[a]bsent a retrospective damages remedy, there would be little to deter federal officials from violating their trust duties, at least until the allottees managed to obtain a judicial decree against future breaches of trust.' " *Id.* at 227, 103 S.Ct. at 2973 (citation omitted). As indicated, plaintiffs offer this language as instructive on the issue whether Section 241(a) may be read as embodying a right to additional compensation to remedy a breach of the statute's requirement for equal hours.

The argument is not convincing. A reading of the *Mitchell* decision in its entirety makes it clear that the critical determinant in the Court's recognition of a damage remedy was not the analysis reflected in the language plaintiffs have cited. Rather, it was the existence of the trust relationship that determined the result. From that relationship, said the Court, the right to sue the trustee for damages for breach of trust "naturally follows." *Id.* at 226, 103 S.Ct. at 2972. Or, as the Court had also put it, it is a right that is included as a "fundamental incident" of the trust relationship. It is this language then that marks the essence of the *Mitchell* ruling. By contrast, what plaintiffs have cited is just make-weight— language supportive of the conclusion but not controlling in its own right. In short, that language does not provide a rule for determining when a damage remedy may properly be inferred.

The same is true of the other case on which plaintiffs rely, *Anderson v. United States*, 5 Cl.Ct. 573 (1984), *aff'd*, 764 F.2d 849 (Fed.Cir.1985). At issue in *Anderson* were claims by certain construction workers employed by the Government as "intermittent," "temporary" or "term" employees, seeking recovery of the monetary equivalent of sick leave, annual leave, health and life insurance benefits, per diem allowances and the rates of pay they would have received as prevailing rate employees. The court denied the claims based on the finding that plaintiffs were not members of the statutory class entitled to the benefits being claimed and, further, that the court lacked the power to order their reclassification so as to bring them within that class.

In the course of deciding the issue, the court noted that the result would have been different, that is, plaintiffs would have been entitled to the monetary equivalent of the benefits they claimed, had those benefits been unlawfully denied them in the first instance. As the court reasoned it, the Constitution, a statute, or a regulation should be "fairly interpreted as mandating compensation" when a statute confers a benefit that is economic in nature and the Government breaches its duty to confer that benefit. 5 Cl.Ct. at 577. Plaintiffs rely on this reasoning, and the affirmance of the *Anderson* decision on appeal, as confirming their right to monetary relief in the present case. The argument is not persuasive.

To start with, the court of appeal's affirmance of the *Anderson* decision should not be taken as imparting any special significance to the language plaintiffs rely on. Not only was that language not essential to the holding but, more than once, the Federal Circuit has cautioned litigants that it reviews "judgments, not statements in opinions." *Fogarty v. United States*, 780 F.2d 1005, 1013 (Fed.Cir.1986); *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1540 (Fed.Cir.1983).

Second, the wisdom of adhering to these words of caution is borne out by the fact

that the standard for determining the existence of a monetary remedy that was proposed by the trial court in *Anderson* has never found favor with the Federal Circuit. Indeed, it would be fair to say that the language has been impliedly rejected by the Federal Circuit.[1]

The case that urges this conclusion is *Hambsch v. United States*, 848 F.2d 1228 (Fed.Cir.1988). Hambsch was an employee of the Uniformed Division of the United States Secret Service who sued in the Claims Court for lost wages based on the claim that he had been unlawfully denied administrative leave (*i.e.*, leave not chargeable to either sick or accrued leave) during the period of his recuperation from alleged job-related disabilities. His lost wages claim included the value of the sick leave and accrued leave that he exhausted as well as his days of leave without pay. The Claims Court entered a summary judgment of dismissal based on its review of the record and its determination that the agency's denial of administrative leave had not been arbitrary, capricious, or without the support of substantial evidence.

An appeal was taken and there the focus of the litigation changed. In the Federal Circuit's view of the case, the issue was not whether the Claims Court had correctly decided the merits of the matter but whether it had jurisdiction to decide the question at all. And the conclusion reached was that the Claims Court did not have jurisdiction because plaintiff's cause of action was not based on a money-mandating statute. The analysis that led to this conclusion is instructive here.

Hambsch's suit in the Claims Court was grounded on a statute, 5 U.S.C. § 6324

(1982), which states in pertinent part that: "(a) Sick leave may not be charged to the account of a member of the ... [Uniformed Division] for an absence due to injury or illness resulting from the performance of duty." In deciding whether a violation of the statute was redressable through monetary damages, the court began by noting that a basic principle of Tucker Act jurisdiction under Section 1491 is that "the consent of Congress to suit on any class of claim 'cannot be implied but must be unequivocally expressed.'" 848 F.2d at 1230 (quoting *United States v. Testan*, 424 U.S. 392, 399, 96 S.Ct. 948, 954, 47 L.Ed.2d 114 (1976)). In applying this principle to the statute in question, the court observed that section 6324 was phrased in the negative— "sick leave may not be charged" for a job-related absence or injury—a wording which the court said "may indicate an intent to create a liability for back pay for violation, but it is hard to say it does so 'unequivocally.' It may be written the way it is to *avoid* creating any affirmative entitlement." *Id.* at 1231 (underscoring original). The court further noted that section 6324 was part of a statute whose primary concern was the establishment of a suitable sick leave system for certain police and firemen—one that prevented the use of sick leave for line-of-duty injuries. Based on the language of the statute and its purpose, the court concluded that Congress had not "unequivocally expressed" an intent to create a retroactive liability in money damages for placing a police officer on sick leave when he should have been placed on administrative leave.

Adhering to the analysis in *Hambsch*, we are compelled to conclude that in this case too Congress has not unequivocally ex-

1. During the oral argument of this case, plaintiffs also referred the court to the decisions in *Barber v. United States*, 230 Ct.Cl. 287, 676 F.2d 651 (Ct.Cl.1982) and *Kelli v. United States*, 826 F.2d 1049 (Fed.Cir.1987); the contention being that, in these two decisions, the court provided a monetary remedy where none was expressed in the governing statute. We have examined these decisions and do not find them at all on point. Both cases deal with the same question: whether a military member's surviving spouse has a right to a survivor's annuity under 10 U.S.C. § 1448(a) (1982), the Survivor Benefit Plan,

when, during the member's lifetime, notice of his election against providing for a survivor's annuity was not given to the affected spouse. The holding in both cases is to the effect that, absent compliance with the statutory notice requirement, a service member's election is a nullity; hence the surviving spouse *retains* the annuity entitlement provided under the statute. *Barber* at 654, 657; *Kelly* at 1052. Far from *implying* a right to monetary damages, these decisions do no more than *preserve* a statutory entitlement to money.

pressed its consent to permit a monetary remedy for violations of 20 U.S.C. § 241(a) (1982). The statute, plaintiffs say, calls for unequivocal alignment between their own positions and their District of Columbia counterparts as to all quantifiable aspects of the employment relationships. Thus, not only is their compensation to be on the same basis, but so too their "tenure," "leave," "hours of work" and "other incidents of employment." Therefore, if the argument holds that a disparity in hours may be redressed through a money judgment, then so also would a disparity in tenure, leave and other incidents of employment be redressable in the same manner.

However, nothing in the text of the statute would permit the court to read into it a broad mandate for enforcement by money judgment. Indeed, the more logical inference to be drawn here is that, in specifying identity in all employment incidents, Congress intended that the statute be enforced according to its terms rather than through the allowance of money damages offered in substitution of statutory rights. To put it another way, the statute's insistence upon equality in hours of work and other incidents of employment—rather than just equality in pay—expresses an emphasis demanding literal enforcement of the law. Consequently, adherence to the legislative scheme requires that plaintiffs seek specific relief to remedy an imbalance in hours of work rather than press here with what essentially amount to overtime claims.

Nothing in the legislative history which plaintiffs have cited points to a different conclusion. The relevant congressional report, H.R. No. 95–1137, 95th Cong., 2d Sess., *reprinted in* 1978 U.S.Code Cong. & Ad.News 4971, 5076–5078 explains that the statutory language in question was proposed by members of the Antilles Consolidated Teacher Association to overcome a deficiency in existing law which, the report declares, "invites abuse by not specifying personnel practices, especially regarding salary." *Id.* at 5078. The report goes on to say that "[a]s a consequence of this testimony [from the teachers' association], the Committee has adopted an amendment [the language now in question] making

clear that the compensation, tenure, leave, hours of work and other incidents of employment for personnel in school systems outside of the 50 states must be on the same basis as that provided in the public schools of the District of Columbia." *Id.*

This language does no more than repeat the statutory text and neither source permits this court to say that Congress intended Section 241(a) to include a cause of action for money damages even though no such right was expressly provided. Absent an affirmative indication that Congress intended the statute to be self-enforcing, *i.e.*, that a right to damages should flow from its breach, we must read the law "with that conservatism which is appropriate in the case of a waiver of sovereign immunity." *United States v. Sherwood*, 312 U.S. 584, 590, 61 S.Ct. 767, 771, 85 L.Ed. 1058 (1941).

Since we hold that plaintiffs do not have a right to command the payment of money under 20 U.S.C. § 241(a), it adds nothing to their case to say that their claims are also founded on the Back Pay Act, 5 U.S.C. § 5596(b) (1982). As explained in *Spagnola v. Stockman*, 732 F.2d 908, 912 (Fed.Cir. 1984), the Back Pay Act is merely derivative in application and is not in itself a jurisdictional statute. "Unless some other provision of law commands payment of money to the employee for the 'unjustified or unwarranted personnel action,' the Back Pay Act is inapplicable."

Similarly unavailing is plaintiffs' further contention that their claims for added pay are actionable here as a suit for breach of contract. They reason to this end by saying that, under the terms of the collective bargaining agreement to which they were subject, the Antilles Consolidated School System had agreed to administer all matters covered by the agreement in accordance with "existing or future laws" and hence in accordance with the requirements of Section 241(a). This agreement having been breached—so the argument goes—plaintiffs may therefore recover contract damages for the injury sustained.

Their argument is based on an erroneous legal premise. We have held that the stat-

ute cannot be fairly interpreted as mandating a monetary remedy for its breach. It necessarily follows that Congress, by not writing the statute so as to allow money damages, has thereby acted to prohibit such relief. It is not within the province of the Navy (as the agency under whose aegis the ACSS operates) to change that result by contract. The issue is one of authority. The relinquishment of sovereign immunity —the ultimate issue at stake in any case involving a monetary demand that is to be satisfied from appropriated funds—requires the express consent of the Congress. *United States v. N.Y. Rayon Importing Co.*, 329 U.S. 654, 658–660, 67 S.Ct. 601, 603–04, 91 L.Ed. 577 (1947).

## CONCLUSION

For the reasons given, defendant's cross-motion for summary judgment is granted. The clerk shall enter judgment dismissing the complaints.